AMERICAN TRADING COMPANY, a corporation of the State of Maine, *vs.* NATIONAL FIBRE AND INSULATION COMFANY, a corporation of the State of Delaware.

1. CONTRACTS—INVOLVING BUYER'S CONSUMPTION FOR STATED PERIOD MUST BE MUTUALLY BINDING.

Contracts obligating the purchaser to purchase its entire consumption of certain goods for a stated period from the seller, to be valid, must be mutually binding on the parties, and the buyer's consumption must be reasonably certain and known to the seller, or capable of being approximately ascertained by him, at the time the contract was executed.

2. SALES—DECLARATION FOR BREACH OF CONTRACT TO FURNISH ALL OF MATERIALS REQUIRED HELD INSUFFICIENT.

Declaration for breach of defendant's agreement to furnish plaintiff with all of certain materials that plaintiff should require during a year for its business *held* insufficient in that it failed to show plaintiff's consumption was reasonably certain or known to defendant with reasonable certainty, or to show facts from which it could reasonably be inferred that plaintiff's consumption could have been approximately ascertained by defendant.

*(April 9, 1921)*

PENNEWILL, C. J., and RICE, J., sitting.

*H. H. Ward, Jr.,* (of Ward, Gray and Neary) for plaintiff.

*James I. Boyce* (Robert H. Richards and Philip L. Garrett on briefs) for defendant.

Superior Court for New Castle County, March Term, 1921.

SUMMONS case, No. 21, September Term, 1918.

Action by American Trading Company against National Fibre & Insulation Company, a corporation of the state of Delaware. On demurrer to second amended declaration. Demurrer sustained.

This action was brought upon agreement alleged to have been made May 7, 1915, between the National Fibre & Insulation Company and the American Trading Company. In the declaration previously filed and demurred to, the plaintiff set forth the agreement in *hæc verba* and sued for alleged breaches of the agreement by the failure of the defendant to furnish certain materials specified in orders attached to the declaration. See *supra, p.* 66, 111 *Atl.* 290.

The court in its opinion on demurrer to the former declaration recognized that the very strict rule declared in *Bailey v. Austrian,* 19 *Minn.* 535 (*Gil.* 465), has been somewhat modified on account of the growth and exigencies of business and followed the later cases in holding that contracts are not void for lack of mutuality and certainty if in the light of surrounding circumstances the quantity contracted for can reasonably be ascertained or is capable of being approximately ascertained at the time of making the agreement.

The amended declaration as now filed expressly alleges that the plaintiff was "a middleman and distributor of the hereinafter mentioned wares and merchandise and having a regular market in Japan for the sale of the same," and further alleges as follows:

"(1)   The character of plaintiff's business is one that has long been established in Japan, it having had a branch established business in that country of about forty years' standing, and it further having had branches established in other parts of the world in and the United States of long standing.

"(2)   The plaintiff's business at the time of the signing of said contract was one likely to continue, in that their New York or home office in 1915 employed 100 employees and in that it had ten branch offices in the principal cities of the world. Further than this, it had an authorized capital stock of $5,-000,000.00 and the total export and import sales for the year 1915 which was transacted by the New York office of plaintiff amounted to over $13,000,000.00.

"(3)   The defendant knew the consumption or approximate requirements under the contract prior to the signing thereof, for the reason that it had knowledge that the fiber ordered under said contract was to be exported by plaintiff to Japan and sold to houses in Japan, and that the defendant, prior to its signing said contract, thoroughly discussed and considered with plaintiff the various points relating to the plaintiff's consumption or approximate requirements."

The defendant has demurred to this amended declaration upon the following grounds:

(A)  The said amended declaration and each of the counts thereof, is based upon an agreement which is wholly void for want of mutuality of obligation.

(B)  The said amended declaration and each of the counts thereof is based upon an agreement which is wholly void for want of any real consideration to support it.

(C)  The said amended declaration and each of the counts thereof is based upon an agreement which is wholly void for uncertainty.

(D)  It does not appear from the said amended declaration or any of the counts thereof that the goods ordered by the said plaintiff from the said defendant were within the limits of any certain quantity known to the said defendant prior to the signing of the alleged agreement.

### Argument For Defendent On Demurrer.

(A)  It is true that "mutuality" is one of those inexact terms which sound so well and which mean so many different things that its use confuses more than it aids.  It really includes a number of different ideas: (1)  The contract may fail to impose any obligation upon the adverse party;  (2) the contract may appear to impose an obligation upon each party but by reason of some extrinsic fact no enforceable obligation results;  (3) a contract is said to lack mutuality when written evidence which is prescribed by statute is available against one party but not against the other;  (4) a contract is said to lack mutuality when some equitable remedy is available to one party and not to the other.

Lack of mutuality as we understand it and as we shall use the term in this brief means the absence of a real, valid, enforceable promise given by one party as consideration for the promise of the other party.  *Anson on Contracts*, 90–94; *Page on Contracts*, § 564 *et seq.*

The agreement of the American Trading Company in the present case is to purchase "their entire consumption of vulcanized fiber and insulating papers covering a period of one year from May 7th, 1915, to May 7th, 1916."

Under the earlier cases, such as *Baily v. Austrian*, 19 *Minn.* 535 (*Gil.* 465), such an agreement is void because there is no promise on the part of the American Trading Company to purchase a single dollar's worth of fiber. The company may or may not have any consumption depending upon whether it is advantageous to sell the products mentioned in the agreement. Those who look at the question from a purely academic point of view and who attempt to evolve a doctrine of consideration universally applicable say that any detriment suffered by the promisor is consideration. They say that the promisor is bound not to purchase from any one else; that this is a legal detriment; and that the law is not concerned with adequacy of the consideration.

But the law is concerned with the reality of the consideration and a consideration which may be wholly illusory is not a real consideration.

Thus it is held in numerous cases that a contract to take such quantities of an article as the promisor may wish, want or desire is not binding because the promisor may not wish, want or desire any of the article and the whole of the apparent contract is left to his whim or caprice.

Such are the following cases: *American Cotton Oil Co. v. Krik et al.*, 68 *Fed.* 791, 15 *C. C. A.* 540; *Rehm-Zeiher Co. v. F. G. Walker Co.*, 156 *Ky.* 6, 160 *S. W.* 777, 49 *L. R. A.* (*N. S.*) 694; *Fitzgerald v. First National Bank of Rapid City*, 114 *Fed.* 475, 52 *C. C. A.* 276; *Hoffman v. Maffioli*, 104 *Wis.* 631, 80 *N. W.* 1032, 47 *L. R. A.* 427; *Higbie v. Rust*, 211 *Ill.* 333, 71 *N. E.* 1010, 103 *Am. St. Rep.* 204; *W. S. Campbell v. A. Lambert & Co.*, 36 *La. Ann.* 35, 51 *Am. Rep.* 1; *Drake v. Vorse*, 52 *Iowa*, 417, 3 *N. W.* 465.

There are cases, however, in which the promisor does not expressly agree to take any of the given article, but by reason of his business and the constant demand for such article in that business, the contract is held to be valid. A careful examintion of these cases will show them to be based on the following facts:

(a)    The commodity contracted for is a mere incident to a large business.

(b)   The business is one which will absolutely need the commodity.

(c)   The amount of the commodity required is subject to a certain physical maximum.

Among these cases are the following:   *T. B. Walker Manufacturing Co. v Swift & Co.*, 200 *Fed*. 529, 119 *C. C. A.* 27, 43 *L. R. A.* (*N. S.*) 730;   *Lima Locomotive & Machine Co. v. National Steel Castings Co.*, 155 *Fed*. 77, 83 *C. C. A.* 593, 11 *L. R. A.* (*N. S.*) 713; *Loudenback Fertilizer Co. v. Tennessee Phosphate Co.*, 121 *Fed*. 298, 58 *C. C. A.* 220, 61 *L. R. A.* 402;   *A. Klipstein & Co. v. Allen et al. (C. C. )* 123 *Fed*. 992; *Marx v. American Malting Co.*, 169 *Fed*. 582, 95 *C. C. A.* 80;   *Campfield v. Sauer*, 164 *Fed*. 833, 91 *C. C. A.* 304; *Sterling Coal Co. v. Silver Spring Bleaching & Dyeing Co.*, 162 *Fed*. 848, 89 *C. C. A.* 520;   *Manhattan Oil Co. v. Richardson Lubricating Co.*, 113 *Fed*. 923, 51 *C. C. A.* 553;   *Pittsburgh Plate Glass Co. v. H. Neuer Glass Co.*, 253 *Fed*. 161, 165 *C. C. A.* 61; *McCaw Mfg. Co. v. Felder et al,* 115 *Ga*. 408, 41 *S. E.* 664;   *El Dorado Ice & Planing Mill Co. v. Kinard*, 96 *Ark*. 184, 131 *S. W.* 460; *East v. Cayuga Lake Ice Line*, 21 *N. Y. Supp*. 887[1];   *E. G. Daily Co. v. Clark Can Co.*, 128 *Mich*. 591, 87 *N. W.* 761;   *Golden Cycle Mining Co. v. Rapson Coal Mining Co.*, 188 *Fed*. 183, 112 *C. C. A.* 95;   *Wells v. Alexandre*, 130 *N. Y.* 642, 29 *N. E.* 142, 15 *L. R. A.* 218;   *Excelsior Wrapper Co. v. Messinger*, 116 *Wis*. 549, 93 *N. W.* 459;   *S. B. Smith & Co. v. R. S. Morse*, 20 *La. Ann*. 220;   *Minnesota Lumber Co. v. Whitebreast Coal Co.*, 160 *Ill*. 85, 43 *N. E.* 774, 31 *L. R. A.* 529;   *National Furnace Co. v. Keystone Mfg. Co.*, 110 *Ill*. 427.

The foregoing cases depart from the strict and logical rule of the earlier cases on one theory and one theory only, namely: *Id certum est quod certum reddi potest.*

The physical capacity of a manufacturing plant sets a certain absolute maximum to the amount of the commodity which may be ordered under a contract and the necessity of the business using the commodity as an ingredient or incidental to the business sets

---

[1]Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 66 *Hun*, 636.

a certain though somewhat indefinite minimum.   In the case at bar the plaintiff has alleged that it was a middleman, a trader, a buyer and seller, with markets in Japan and elsewhere.   It certainly has not been trading in vulcanized fibre for forty years because vulcanized fibre is a comparatively recent product.   It may have regarded its markets as well settled but the fact remains that it was not required under the contract to take a single pound of fiber.   If it had failed to order any fiber the defendant would have had no cause of action.

It is the very nature of the business of the plaintiff which makes it absolutely impossible to apply any test of certainty to the alleged agreement.

In the case of *Crane et al v. C. Crane & Co.*, 105 *Fed.* 869, 45 *C. C. A.* 96, upon which we strongly rely not only because of the similarity of the facts but also because of the cogency of opinion it was held that an agreement by a wholesale dealer to supply a retail dealer during a certain time at stated prices with so much of a commodity as the purchaser might require for his trade was void for want of mutuality.   The court reviewed these "requirement" cases and properly held that reasonable prevision in business requires such contracts, though more or less indefinite, to be upheld.

Similar cases holding such contracts void for want of mutuality of obligation are:   *Hazelhurst Lumber Co. v. Mercantile Lumber & Supply Co. (C. C.)* 166 *Fed.* 191; *Parks et al. v. Griffith & Boyd Co.*, 123 *Md.* 233, 91 *Atl.* 581;   *Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co.*, 114 *Fed.* 77, 52 *C. C. A.* 25, 57 *L. R. A.* 696;   *T. W. Jenkins & Co. v. Anaheim Sugar Co.*, 247 *Fed.* 958, 106 *C. C. A.* 658, *L. R. A.* 1918E, 293.   The court is respectfully referred to the excellent reasoning found in the opinion in the lower court *(D. C.)* 237 *Fed.* 278.   See *Grand Prairie Gravel Co. et al. v. Joe R. Wills Co. (Tex. Civ. App.)* 188 *S. W.* 680.   We contend that the case of *Huggins v. S. E. Lime & Cement Co.*, 121 *Ga.* 311, 48 *S. E.* 933, is exactly in point.   *Scott v. T. W. Stevenson Co.*, 130 *Minn.* 151, 153 *N. W.* 316; *Tarbox v. Gotzian*, 29 *Minn.* 139 *(Gil.* 122).

(B)   This is merely another way of stating our previous contentions.   The plaintiff was not required to purchase any vulcanized fiber.   The apparent consideration in its promise to purchase all its consumption would become illusory and unreal if it had no consumption.   The test is not what did happen but what might have happened.   Was the agreement valid when made?   What substantial right, what real consideration was acquired by the defendant when the alleged agreement was signed?   This agreement, signed by a middle man, might as well have read,  "If you require, or wish, or want, or need any fiber we will let you have it," for there was no assurance either in the contract or in the business of the plaintiff that it would require fiber.

(C) In addition to mutuality and utterly apart from the question of consideration, a contract for the sale of goods must have reasonable certainty.   An agreement under seal importing consideration or an agreement upon an executed consideration such as the payment of $5 would not and could not be enforced if it were uncertain and indefinite as to a vital term.   Many of the foregoing cases which speak of "mutuality" refer to "certainty" and consequently it is respectfully submitted that if there were in this case no question of mutuality there would be an insuperable question of certainty.   There is no minimum and no maximum. The business of the plaintiff made certainty impossible.   It was doing a world-wide business under world-wide conditions.   Japan and the United States might have declared war against each other. No orders would have been received and yet the defendant would have suffered damnum absque injuria.   On the other hand, Japan might have and did declare war against some other country and its orders might have and doubtless did exceed anything to be expected.   Such a trader had no normal consumption.

(D)   We confidently rely upon our contention that the alleged agreement is void for want of mutuality and for uncertainty as to a vital term.   But for the sake of argument we assume that the plaintiff and defendant had in mind some definite quantity. It is alleged that the parties "thoroughly discussed and considered the various points relating to the plaintiff's consumption or ap-

proximate requirements," and yet it is not alleged either directly or by proper inference that the quantities ordered by the plaintiff came within the approximate requirements thus discussed. The present declaration has not the essential averments relied upon in the Jenkins Case. Even if it should be held that a trader may make such a contract, it would unquestionably be held that the trader must plead himself within its terms. The plaintiff must show to the court here its normal consumption which is a vital term of the contract and must show that its orders fell within such normal consumption.

### ARGUMENT FOR PLAINTIFF.

(A)   To begin with, we wish to consider the first and third causes of demurrer.

In drawing the new declaration we have endeavored to correct the defects pointed out in the opinion of the court sustaining the demurrer to the former declaration.

We have alleged that the plaintiff was engaged in the certain business of "middleman and distributor of the hereinafter mentioned wares and merchandise."

In order to show (1) the character of the business that the plaintiff was engaged in, (2) the probable permanence or nature of purchaser's business, (3) to show the ability and opportunity of the seller to make a reasonably correct estimate of the quantity of goods bargained for, we alleged as shown in first argument above, marked (1), (2) and (3).

Referring to the strict rule declared in *Bailey v. Austrian*, 19 *Minn.* 535 (*Gil.* 465), recognized by this court in its former opinion, we submit that we have alleged facts showing that, in the light of surrounding circumstances, the quantity contracted for could reasonably be ascertained and was capable of being approximately ascertained at the time of making the agreement.

We contend that we have shown that the plaintiff had an established business, by allegations in counts 1, 2 and 3, and that, according to the modern view we have shown mutuality of obligation and sufficient certainty respecting the quantity of goods that the buyer will require.

The amended declaration contains allegations showing that we have an established business normally requiring commodities of the kind contracted for, and showing that the quantity required in the business can be reasonably reduced to a certainty.

By these allegations, we have shown that the plaintiff does not come within the class of cases mentioned in the former opinion of this court in which it was said:

"From an examination of the cases bearing upon the point, it may be stated that when the engagement of the buyer is merely to receive the goods he may want or order, or when his business is not established, and there is no reasonable probability that the business will continue, or will require any substantial quantity of the goods covered by the agreement, the law holds that the engagement of the buyer is not an obligation but an option to take or not take any goods only as he may desire, and the contract is void for want of mutuality or certainty."

In the former opinion of this court, there is set out part of the opinion in the case of *Cold Blast Trans. Co. v. Kansas City Bolt & Nut Co.*, 114 *Fed.* 77, 52 *C. C. A.* 25, 57 *L. R. A.* 696, the last part of which is as follows:

"The line of demarcation between valid and invalid contracts here runs between the requirements of machinery, or of an established business, and the wants, desires, or requirements of the tentative vendee; and that because the former are either reasonably certain, or may be made so by evidence, while the latter are conditioned by the will of the tentative vendee alone, and are both uncertain and capable of infinite variation."

We submit that it has been clearly alleged in counts 1, 2, and 3 that the plaintiff has an established business whose requirements are certain and not tentative for the period of the contract.

There is nothing in the statement of the law laid down in *Loudenback Fert. Co. v. Tennessee Phosphate Co.*, 121 *Fed.* 298, 58 *C. C. A.* 220, 61 *L. R. A.* 402, quoted from the former opinion of this court, that could not apply to the present declaration, and the allegations in the various counts which we have several times referred to show surrounding circumstances sufficient to make out a cause of action which falls within the above rule of law.

Another case cited by Judge Rice in the former opinion of this court with which we submit our declaration complies is *T. B. Walker Mfg. Co. v. Swift & Co.*, 200 *Fed.* 529, 119 *C. C. A.* 27, 43 *L. R. A.* (*N. S.*) 730; also the cases of *T. W. Jenkins & Co. v.*

*Anaheim Sugar Co.*, 247 *Fed.* 958, 160 *C. C. A.* 658; *Berry v. Harper*, 4 *Gill & J. (Md.)* 467.

We submit that the rules of law in these cases mentioned have been met by allegations in the various counts of the amended declaration.

(B)   The only possible objection that we can discover that the defendant's counsel might contend for under his first and third grounds of demurrer is that, since we have declared plaintiff to be a middleman or distributor, nothing can save plaintiff from the consequences of being a middleman or distributor.   In other words, the defendant's counsel might contend that it is a rule of law that any consumption contract made with the middleman or distributor is *ipso facto* void for lack of mutuality or uncertainty, regardless of the fact that the declaration alleges, as the circumstances of the case:

(1)   The particular business the buyer is engaged in.

(2)   That the business of the buyer is an established business; in other words, that it is a certain business.

(3)   That the buyer's business was one likely to continue.

(4)   That the seller knew the consumption of the buyer, or that the consumption or approximate requirements of the buyer were capable of being reasonably estimated at the time the agreement was entered into.

We most sincerely contend that the best rule of law on this point does not take any such limited attitude as to the construction of comsumption contracts.   The following authorities support our view of the law on this question of middleman.   These cases apply both to mutuality and to certainty.   *Crane v. Crane & Co.*, 105 *Fed.* 869, 871, 45 *C. C. A.* 96.

Our comment on this case, which will apply to all the federal cases that we will cite under this point, is that the court recognized that, where the buyer had a certain business which was a definite or established business, reasonable provision in business required that consumption contracts, though more or less indefinite, should be upheld.   And these consumption contracts should be upheld where, though the quantity under the contract is not

measured by any certain standard, it is capable of an approximately correct forecast.

The middleman or distributor is not necessarily one who engages in an uncertain business. Any individual who buys from the source of supply and sells to another individual is a middleman. Any coal dealer, pig iron dealer, steel sheet dealer, wool buyer or wheat buyer may be a middleman. Can it be said that their business cannot be reasonably estimated so as to arrive at their approximate consumption during a given period of time?

We frankly admit that there are some two or three federal cases which indicate that a manufacturer, or one engaged in a manufacturing business, is that sort of an individual whose business can be so reasonably estimated as to arrive at his approximate consumption.

The cases of *Loudenback Fert. Co. v. Tenn. Phosphate Co.*, 121 *Fed.* 298, 58 *C. C. A.* 220, 61 *L. R. A.* 402, and *Lima Locomotive & Machine Co. v. National Steel Castings Co.*, 155 *Fed.* 77, 83 *C. C. A.* 593, 11 *L. R. A.* (*N. S.*) 713, indicate that Judge Lurton was endeavoring to restrict the liberal tendency towards construction begun in the case of *Crane v. Crane*, of applying the doctrine to any certain business. But these cases were early cases, as their references will show. Some of the cases that we shall cite as holding the broader view laid down in *Crane v. Crane* appear in volumes as late as 247 *Federal*.

The following federal cases deal with the particular phrase relating to "certain business," and we desire to make the comment that, in our opinion, the above case of *Crane v. Crane* and the federal cases cited below show the weight of authority on this point of middleman:

*Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co.*, 114 *Fed.* 77, 52 *C. C. A.* 25, 57 *L. R. A.* 696; *Marx. v. American Malting Co.*, 169 *Fed.* 582, 95 *C. C. A.* 80 (it will be noted that Judge Lurton sat in this case in the Circuit Court of Appeals, when the above opinion was given); *Golden Cycle Mining Co. v. Rapson Coal Mining Co.*, 188 *Fed.* 179, 112 *C. C. A.* 95; *T. B. Walker Mfg. Co. v. Swift & Co.*, 200 *Fed.* 529, 119 *C. C. A.* 27, 43

*L. R. A. (N. S.)* 730; *T. W. Jenkins & Co. v. Anaheim Sugar Co.,* 247 *Fed.* 958, 160 *C. C. A.* 658.

For rejection of discrimination against whosesaler, see latter part of decision below.

The court in referring to *Minn. Lumber Co. v. Whitebreast Coal Co.,* 160 *Ill.* 85, 43 *N. E.* 774, 31 *L. R. A.* 529, said:

"This decision is referred to in *Cold Blast Trans. Co. v. Kansas City, etc., Co.* 114 *Fed.* 77, 52 *C. C. A.* 25, 57 *L. R. A.* 696. In the latter case the court had before it an offer to deliver an unascertained quantity of goods at a stated price and acceptance thereof, but no agreement to purchase the requirements or any portion thereof, and in a very forceful discussion, Judge Sanborn for the court, held that such a contract was void and unenforceable because of indefiniteness and for a lack of mutuality of obligation. We do not understand, however, that the court went so far as to express the opinion that all contracts for future supply during a limited time, of articles which shall be required or needed, are invalid."

The state decisions on this point of middleman will be found set out and discussed in the various federal cases cited above, and therefore we will not encumber our brief with them.

· We have in the above discussion mentioned all the cases that we could discover relating to the question of "certain business" or "established business." We think that the plaintiff in this new declaration has come fully within Judge Rice's opinion as to what should be alleged to state a cause of action. Further than this, we believe that the plaintiff has not, by alleging that it is a middleman or distributor, done anything to show that it has no cause of action. In our opinion, the plaintiff has shown that its declaration, and each of the counts therein, is based on a contract that is valid on the points of certainty and mutuality.

(C)    Coming to the second cause of demurrer, there is a rule of law which is to the effect that—

"When the only consideration for a contract is that which arises from an exchange of promises, there must be mutuality of obligation, else the consideration is not sufficient. Both parties must be bound so that in case of breach by either the other would have a right of action therefor. *Hammond on Contracts,* 682."

In the first place, we wish to call the court's attention to the language of Judge Rice in his decision upon the demurrer to the former declaration in this case:

"Assuming that the agreement was not void for lack of mutuality and certainty, there can be no doubt that under the contract the defendant agreed to sell and was bound to sell and deliver to the plaintiff such amounts of fibre as it should require for its consumption. Such was clearly the intention of the parties."

It is clearly stated in the contract itself that the buyer, who is the plaintiff in this case, agreed to buy, and this is clearly alleged in the body of the counts of the declaration.

Therefore, assuming that there is mutuality and certainty, then there is in this case a promise to buy and a promise to sell.

In order to show that there is mutuality in this contract, we wish also to call the court's attention to the following language of Judge Rice in the same opinion:

"In the present case in the declaration the agreement in full is set out, but the quantity contracted for is uncertain and there is no averment of surrounding circumstances which may make the quantity certain. It does not appear from the declaration the business that the plaintiff is engaged in or that it was engaged in any business. It is impossible to tell from the declaration whether the plaintiff is a manufacturer, retailer, factor, middleman or distributor. As the validity of agreements, such as in this case, depends on the probable permanence or nature of purchaser's business, and the ability and opportunity of the seller to make a reasonably correct estimate of the quantity of goods bargained for, the declaration in the present case cannot stand for there is nothing in the present declaration to even indicate the existence of such necessary facts."

We contend that, in the light of the language of Judge Rice and language in the cases cited, there is mutuality in this contract, as now alleged by us in our new declaration.

The result is that, since there is mutuality in this contract, there is a promise on the part of the seller. It is not disputed that there is a promise on the part of the buyer. Thus we have a promise for a promise and mutuality of obligation, and therefore the consideration in this contract is sufficient, assuming that the only consideration for the contract is that arising from an exchange of promises. *Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co.*, 114 *Fed.* 77, 52 *C. C. A.* 25, 57 *L. R. A.* 696. The above case briefly states the rule, and we contend that our declaration comes within the rule.

The following cases elaborate upon the rule: *Golden Cycle Mining Co. v. Rapson Coal Mining Co. et al.*, 188 *Fed.* 179, 112

*C. C. A.* 95; *Ramey Lumber Company v. John Schroeder Lumber Co.*, 237 *Fed.* 39, 150 *C. C. A.* 241; *T. W. Jenkins & Co. v. Anaheim Sugar Co.*, 247 *Fed.* 958, 160 *C. C. A.* 658.

Another way in which the above rule previously quoted from *Hammond on Contracts*, 682, may be stated is found in 1 *Page on Contracts*, 452, as follows:

"Where the parties assume to make a contract in which a promise is the consideration for a promise, and analysis shows that one of the promises does not impose any legal duty upon the party making it, such promise is not a consideration for the other promise. This is what is often meant by saying that promises must be mutual."

We contend that we have stated a cause of action which falls within this version of the rule.

The way in which we have alleged our case in the new declaration shows that, according to Judge Rice's former opinion and the cases relied upon in that opinion, and the additional cases cited in an earlier part of this brief, the promise of plaintiff does impose a legal duty upon him, and therefore plaintiff's promise is a consideration for defendant's promise.

(D)   We state in this new declaration, in each of the counts thereof, that the defendant knew the consumption or approximate requirements under the contract prior to the signing thereof, for the reason, among others, that the defendant discussed and considered with the plaintiff the various points relating to plaintiff's consumption or approximate requirements.

We alleged, in effect, that by the contract which we have set out the plaintiff agreed to buy from defendant all of plaintiff's consumption for a certain period, and to accept and receive the same, and that defendant undertook to deliver said goods. We have further alleged that the plaintiff sent to defendant numerous orders to be filled by defendant, according it its (defendant's) aforesaid agreement.

"Its aforesaid agreement" can only mean defendant's agreement to supply "said goods"—that is to say, plaintiff's consumption.

And since we have alleged that defendant knew the consumption of plaintiff, we have alleged as clearly as need be that the goods

ordered by the plaintiff from the defendant were within a certain quantity known to defendant prior to the signing of the alleged agreement. In other words, we have clearly stated that the goods ordered by plaintiff were within plaintiffs consumption, and that this consumption was known to defendant prior to signing the alleged agreement.

For the reasons above given, we ask that the court overrule the defendant's demurrer.

RICE, J., delivering the opinion of the court:

The court will consider the fourth ground of demurrer. The declaration as recently amended sets forth that—

"The defendant knew the consumption or approximate requirements under the contract prior to the signing thereof, for the reason that it had knowledge that the fibre ordered under said contract was to be exported by plaintiff to Japan and sold to houses in Japan, and that the defendant, prior to its signing said contract, thoroughly discussed and considered with plaintiff the various points relating to the plaintiff's consumption or approximate requirements."

[1, 2] The plaintiff's allegation of knowledge by the defendant, relative to the consumption or approximate requirements of the plaintiff under the contract, is most general in character. The knowledge charged to the defendant fixes to a limited degree only a greater certainty upon the amount of plaintiff's consumption than that fixed by the terms of the written contract. Contracts such as presented in this case to be valid must be mutually binding upon the parties, and the buyer's consumption must be reasonably certain and known to the seller, or capable of being approximately ascertained by him, at the time the contract was executed. The declaration fails to show that the plaintiff's consumption was reasonably certain, or was known to the defendant with reasonable certainty, neither are facts alleged, as known to the defendant, from which it could reasonably be inferred that the consumption of plaintiff, with respect to the articles contracted for, could have been approximately ascertained by the defendant.

If it was plaintiff's intention to allege an understanding between the parties to the contract with respect to consumption or

approximate requirement, he has failed to plead such understanding sufficiently in detail to meet the requirements of good pleading. The defendant is entitled to know the nature and extent of the understanding, if any, with which it is charged. As the declaration now stands it is impossible to ascertain whether the amounts ordered by the plaintiff under the contract come within the terms of any contemporaneous understanding between the parties.

For the reasons stated we sustain the demurrer on the fourth ground urged. We think it not necessary to pass upon the other grounds argued for the reason that if there was an understanding between the parties approximately fixing plaintiff's consumption, and such understanding is sufficiently pleaded, then that understanding would take the contract out of that class of similar contracts generally held invalid for want of mutuality or certainty. If there was no understanding between the parties of the nature already mentioned, then in the absence of a statement of facts not now pleaded, from which it could be reasonably inferred that the defendant could have ascertained, within a reasonable certainty, the plaintiff's consumption or approximate requirements, the contract must be held invalid for want of certainty or mutuality.

The demurrer is sustained to each of the counts.